### Joy *v.* Banco Territorial y Agrícola.

### Casación procedente de la Corte de Distrito de Arecibo.

No. 20.—Resuelto en Enero 15, 1903.

CONTRATOS.—Para que el consentimiento prestado por error produzca la nulidad de un contrato voluntariamente contraido por las partes, es necesario que se demuestre que tal error existía en las circunstancias que constaban del mismo contrato, pero en modo alguno puede referirse ese error á hechos agenos al contrato.

ID. DOLO.—Para que prospere la acción de nulidad de un contrato, fundada en dolo, es necesario que se acredite la existencia de tal dolo.

ID.—Las ordenes generales de 19 y 31 de Enero, 1899 y 12 de Febrero y 28 de Abril, 1900, no han podido, bajo concepto alguno, modificar, ni anular lo que las partes capaces de obligaciones convinieron de modo libre, expontáneo y legal, por cuya razón dichas disposiciones sólo tuvieron un carácter meramente procesal, suspendiendo el cobro de plazos por cierto tiempo y en determinadas circunstancias.

PRUEBA. APRECIACIÓN.—El hecho de que el Tribunal apreciara ciertas manifestaciones de un letrado que no fueron hechas bajo juramento, no es motivo de revocación, si el Tribunal, por otros fundamentos, sostiene la procedencia de la acción deducida.

COSTAS.—Las Cortes impondrán las costas al litigante cuyas pretensiones esenciales hayan sido totalmente desestimadas.

EXPOSICIÓN DEL CASO.

*Resultando:* que el Licenciado Don Enrique González Darder, en representación de Don Lorenzo Joy, y con fecha

No. 20.—Decided January 15, 1903.

ID.—General Order of January 19, and 30, 1899, and February 12, and April 28, 1900, cannot modify or annul what the parties, having capacity to contract, have freely, legally and voluntarily agreed upon, and said provisions are in the nature of a procedure whereby the collection of instruments is suspended for a certain time and under specified circumstances.

EVIDENCE.—CONSIDERATION.—The fact that the court considered the unsworn statement made by an attorney-at-law is not ground for reversal where the court holds on other sufficient grounds that the action will lie.

COSTS.—Courts will impose all costs upon that litigant whose substantial petitions have failed.

### STATEMENT OF THE CASE.

Lorenzo Joy, through his attorney-at-law, Enrique Gonzalez Darder, under date of August 16, 1901, brought an

16 de Agosto de 1901, presentó demanda ante la Corte de Arecibo, interesando se declarase que su representado tenía consignados en poder del Banco Territorial treinta y siete mil pesos provinciales, desde el año 1896, para que dicho Banco pagara sin demora y cancelara desde dicho año los treinta mil pesos, intereses y costas, moneda mexicana, para obtener la cancelación del primer crédito hipotecario á favor de Don Pedro A. Mayol; que el referido Banco está obligado á cancelar á su costa el referido crédito hipotecario con sus plazos vencidos hasta el noveno; que se declare nula la escritura de liquidación de cuentas y cancelación de hipotecas de 6 de Febrero de 1901, otorgada en San Juan por el Banco y Don Lorenzo Joy, así como también nulo el procedimiento judicial é indemnizarse por el Banco al Don Lorenzo Joy los daños y perjuicios con las costas, fundándo dicha pretensión en los hechos siguientes: que en 18 de Enero del 96, Don Lorenzo Joy celebró un contrato de préstamo hipotecario con el Banco, por la cantidad de cuarenta mil pesos provinciales, para pagar treinta mil en moneda mexicana, y sus intereses y costas y gastos, á Don Pedro A. Mayol, primer acreedor hipotecario, por cuyo motivo dejó en poder de dicho Banco treinta y siete mil pesos provinciales, en esta forma: veinte y dos mil doscientos, en efectivo, y catorce mil ochocientos en cédulas hipotecarias, según la cláusula 11. 2.—Que el Banco no ha pagado á Mayol, primer acreedor hipotecario de la Hacienda "Honradez", y sí únicamente doce mil pesos mexicanos al referido Mayol, más los intereses vencidos del capital asegurado en primera hipoteca, hasta el 15 de Mayo del 96, quedando en poder del Banco, y sin cancelar la hipoteca, en depósito treinta y siete mil pesos oro: que por esa falta de cumplimiento del Banco, Mayol estaba siguiendo ejecutivo contra la hacienda hipotecada y su representado, para hacerse cobro de la totalidad de su crédito: que en 12 de Febrero de 1897, requirió Joy al Banco, por acta notarial, para que pagase á Mayol la cantidad que le debía, protestando re-

action in the Court of Arecibo demanding that it be judicially declared that since the year 1896, he had thirty-seven thousand provincial *pesos* on deposit with the Territorial Bank, to be applied by said Bank to the immediate payment of thirty thousand *pesos*, Mexican coin, with interest and costs, so as to effect the cancellation of the first mortgage credit in favor of Pedro A. Mayol; that aforesaid Bank is bound to cancel, at its cost, the aforesaid debt comprising the matured installments thereof up to the ninth; that the instrument of liquidation of accounts and cancellation of mortgages, of February 6, 1901, executed in San Juan, by the Bank and Lorenzo Joy, be declared void, as also the judicial proceedings had, the latter to be indemnified by the former for damages and costs, said demand being based upon the following facts: 1.—That on January 18, 1896, Lorenzo Joy entered into a contract for a mortgage loan with the Bank, for the sum of forty-thousand provincial *pesos*, whereof thirty-thousand in Mexican coin, with interest, costs and charges, were to be paid to Pedro A. Mayol, first mortgage creditor, for which purpose he had left on deposit with said Bank thirty-seven thousand provincial *pesos*, as follows: twenty-two thousand in cash, and fourteen-thousand and eight hundred in mortgage bonds, according to clause 11; 2.—That the Bank has not paid Mayol, first mortgage creditor of the estate "Honradez", except twelve-thousand *pesos* in Mexican coin, together with the matured interest on the principal secured by first mortgage, up to May 15, 1896, the Bank holding back thirty-seven thousand *pesos* in gold on deposit, without canceling the mortgage; that owing to this default of the Bank, Mayol was prosecuting foreclosure proceedings against the mortgaged estate and plaintiff, for the recovery of his entire credit; that on February 12, 1897, Joy required the Bank by a notarial instrument to pay Mayol the amount due him, holding said Bank responsible for the damages it was causing both to himself and to Mayol; that on June 12, 1898, he inden-

clamarle para sí y Mayol, los daños y perjuicios que estaba ocasionando; que el 12 de Junio del 98 dió en pago el Sr. Joy, por medio de escritura al Banco, la cosecha de café de aquel año para pagar el cuarto, quinto y sexto plazo hipotecario, ó sean los correspondientes á Enero y Julio del 98 y Enero del 99, cuyo café recolectó el Banco y lo vendió según cuenta corriente: que hasta Enero del 99 quedó el Banco pagado de todos los gastos pendientes y en 19 de Enero del mismo año; se dictó la orden de suspensión del procedimiento sumarísimo para hacer efectivos los créditos que vencerían en Enero de 1900: que el referido año fué prorrogado por otro más en dos períodos de seis meses: que en 1900 hubo un incendio en dos casas de la finca gravada, y el Banco cobró el seguro, según escritura de Enero de 1896, y tenía que aplicar siete mil cuatrocientos setenta pesos á cancelar plazos de los cuales sólo aplicó parte, según la escritura cuya nulidad pide: que según edicto publicado en la Gaceta, aparece Don Pedro A. Mayol como acreedor hipotecario por treinta mil pesos, siendo así que ese crédito **no** debe pesar sobre la Hacienda "Honradez", por cuanto Joy tiene entregado al Banco, para su cancelación, treinta y siete mil pesos provinciales: que el Banco reclama por procedimiento sumarísimo el cobro de la hipoteca constituida en Enero del 96, sin cumplir con las cláusulas de dicha escritura, ni con la Ley Hipotecaria y su Reglamento, en razón á no estar vencida la deuda, por no haber vencido dos plazos, ni se ha procedido á nueva tasación: que si Don Lorenzo Joy no hubiera recibido del Director del Banco la seguridad de que si suscribía la escritura del 6 de Febrero de 1901, de liquidación de cuentas y cancelación de hipotecas, en los términos contradictorios de la misma, le facilitaría lo necesario para que la finca rústica estuviera en condiciones para comprenderla en la negociación con el Sindicato: que Joy ha cumplido con exceso de buena fé con todas las cláusulas de los contratos con el Banco.

*Resultando*: que á la demanda acompañó copia simple de

tured to the Bank the coffee crop of that year for payment
of the fourth, fifth and sixth installments on the mortgage,
corresponding to January and July, 1898, and January
1899, which coffee was harvested by the Bank and sold as
per account current; that up to January 1899 all expenses
incurred were paid to the Bank, and on the 19th of January
of the same year an order was issued staying the summary
proceedings to enforce payment of the credits maturing in
January 1900; that the installment due said year was ex-
tended another year, divided into two semi-annual install-
ments; that in 1900, two houses belonging to the mort-
gaged estate were burned down, and the Bank collected the
insurance thereon pursuant to a contract executed in
January 1896, by which it was bound to apply seven
thousand four-hundred and seventy *pesos* to the cancellation
of certain installments, of which it only applied a portion
according to the instrument the annulment whereof is
demanded; that according to a publication made in the
"Gazette" Pedro A. Mayol appears as mortgage-creditor for
thirty-thousand *pesos*, so that said credit should not con-
stitute an incumbrance on the estate "Honradez", inasmuch
as Joy has paid to the Bank for the cancellation thereof
thirty-seven thousand *pesos*, provincial money; that the
Bank seeks to recover by foreclosure proceedings under the
mortgage executed in January 1896, without having com-
plied with the articles of the aforesaid contract, nor with
the provisions of the Mortgage Law, and the Regulations
for the execution thereof, inasmuch as the debt had not
become due since two of the installments thereof had not
matured, nor had a new appraisement been made; that had
not Joy been assured by the Director of the Bank that if
he signed the document of February 6, 1901, in the con-
tradictory terms in which it was drawn, providing for the
liquidation of accounts and cancellation of mortgages, the
Bank would furnish him with the necessary funds to place
the farm in a condition to be included in the negotiation

la sentencia de remate pronunciada por el Tribunal de
Ponce, en 13 de Junio de 1901. en ejecutivo seguido por Don
Pedro A. Mayol contra Don Lorenzo Joy, y por la que se
manda seguir adelante la ejecución : Testimonio de la escri-
tura otorgada en esta Capital en 6 de Febrero de 1901, ante
el Notario Don Santiago R. Palmer, por la cual hacen cons-
tar el Banco Territorial y Don Lorenzo Joy, en resumen, lo
siguiente : que en consecuencia de las liquidaciones practi-
cadas hacen constar que Don Lorenzo Joy adeuda al Banco,
desde el quinto plazo inclusive, los constantes en la escritura
de préstamo hipotecario de 18 de Enero de 1896 ; que el
mismo Joy tiene en el Banco un saldo á su favor de mil
veintitres pesos treinta y cuatro centavos oro americano,
destinados al pago, en cuanto alcanzara esa suma, de su
obligación hipotecaria : que quedan totalmente canceladas
las obligaciones del préstamo agrícola hecho á don Nicolás
Joy y la fianza hipotecaria constituída por Don Lorenzo Joy
en la escritura de 20 de Marzo de 1896 : que la hipoteca
constituída en la de 18 de Enero de 1896, queda cancelada
parcialmente, en cuanto á sus plazos tercero y cuarto, y que
la escritura de entrega y trasmisión de frutos, de fecha 12
de Julio de 1898, queda sin valor ni efecto.

*Resultando* : que el Banco Territorial á quien se confirió
traslado de la demanda solicitó se declare no haber lugar
á decretar la nulidad de la escritura, solicitada, alegando en
su apoyo los siguientes hechos : que era cierto el contrato de
préstamo por el Banco, á Don Lorenzo Joy, por cuarenta mil
pesos y que el Banco se reservó la cantidad necesaria para
cancelar el crédito de Don Pedro A. Mayol, que como parte
de esa suma reservada se pagaron á Mayol intereses de dos
plazos del capital, quedando reducida la deuda de Joy á
Mayol, á diez y ocho mil pesos correspondientes á tres plazos
fijados para 1898, 1899 y 1900, con sus intereses ; que el
depósito del Banco para atender á esa deuda, quedó reducido
á diez y ocho mil pesos mexicanos, ó sean diez y siete mil
cien provinciales, por los que el Banco dió resguardo á Joy :

with the Syndicate, he would not have signed it; that Joy had complied in good faith with all the articles of the contract with the Bank. With the complaint were filed a copy of the judgment of the Ponce Court under date of June 13, 1901, ordering the public sale on foreclosure proceeding in an executory action prosecuted by Pedro A. Mayol against Lorenzo Joy; a certified copy of the instrument executed in this city on February 6, 1901, before Notary Santiago R. Palmer, whereby the Territorial Bank and Lorenzo Joy make the following declaration: That as a result of the liquidations made they bear witness to the fact that Lorenzo Joy is indebted to the Bank for the installments specified in the mortgage loan of January 18, 1896, from and including the fifth installment; that Joy himself has a balance of one thousand and twenty-three dollars and thirty-four cents, American gold, in his favor in the Bank, intended in so far as it may cover same for the payment of his mortgage obligation; that the obligations for the agricultural loan made to Nicolás Joy and the mortgage bond constituted by Lorenzo Joy in the deed of March 20, 1896, are wholly cancelled; that the mortgage constituted in the instrument of January 18, 1896, is partially cancelled as to the third and fourth installments thereof, and that the deed of delivery and conveyance of crops, dated July 12, 1898, is null and void. Notice of the complaint having been served upon the Territorial Bank, it prayed that the application for a decree of nullity of the instrument be dismissed, alleging in support thereof the following facts: Admit the existence of a contract for a loan of forty thousand *pesos* by the Bank to Lorenzo Joy, and that the Bank had reserved the necessary sum to cancel Pedro A. Mayol's credit; that as part of said reserved sum, the interest on two installments of the principal was paid to Mayol, Joy's indebtedness to the latter being reduced to eighteen thousand *pesos*, corresponding to the three installments with interest thereon, maturing respectively in 1898, 1899 and 1900, that the Bank deposit

que mientras se hacía la entrega de esa suma, el Banco tenía entendido, y así se lo hizo creer Joy, que éste seguiría abonando á Mayol los intereses al doce por ciento anual convenido, y bajo tal supuesto, al cobrar á Joy los tres primeros plazos de su hipoteca, le abonó las cantidades de quinientos veinticinco pesos, ochenta y dos centavos, en el primero, setecientos sesenta y nueve pesos, cincuenta centavos, en el segundo, y otros setecientos sesenta y nueve pesos, cincuenta centavos, en el tercero, como intereses al nueve por ciento anual, convenidos entre Joy y el Banco, correspondientes á los diez y siete mil cien pesos provinciales, por entregar, pendiente de que llegase el turno establecido; que Joy no cumplió lo convenido á Mayol y tuvo que verificarlo el Banco para evitar mayores perjuicios; que el Banco estuvo ignorante bastante tiempo de que Joy no pagaba á Mayol los expresados intereses; que en cuanto al ejecutivo de Mayol con Joy, éste último tiene la culpa, por haberse negado á intervenir en la liquidación de intereses, no considerándose el Banco autorizado á pagar por cuenta de Joy más que lo que tiene consignado en depósito: que es cierto el requerimiento hecho en Febrero 12 de 1897, y que esa acta prueba precisamente que los diez y siete mil cien pesos estaban en el Banco para entregarlos cuando le llegase el turno y por tanto fué Joy quien faltó á lo convenido, al no pagar á Mayol los intereses: que por escritura de 12 de Julio de 1898, ante el Notario Don Antonio Alvarez Nava, se convino que para cobrar el Banco el cuarto, quinto y sexto plazo de su hipoteca y otras sumas que le debía Joy, con el mismo motivo, se haría dueño el Banco de los frutos de café de la Hacienda "Honradez": que es falso que el Banco quedara pagado de todos los plazos pendientes hasta Enero del 99, pues en la escritura de liquidación de cuentas, de 6 de Febrero de 1901, consta que la recolección y venta de frutos, que tomó el Banco á su cargo, por la de 12 de Julio de 1898, deducidos los gastos, el producto no fué suficiente á cubrir la cuenta á que se destinaba; que según lo convenido,

to meet said indebtedness was reduced to eighteen thousand Mexican *pesos*, equal to seventeen thousand one hundred provincial *pesos*, for which the Bank gave Joy a receipt; that while payment of aforesaid sum was being made, the Bank had been given to understand by Joy that he would continue to pay Mayol the stipulated interest at twelve per cent per annum, and under that supposition upon collecting from Joy the first three installments of the mortgage, it had credited him on the first with the sum of five hundred and twenty-five *pesos* and eighty-two *centavos*, on the second, seven hundred and sixty-nine *pesos* and fifty *centavos*, and on the third another seven hundred and sixty-nine *pesos* and fifty *centavos*, as interest at nine per cent per annum, agreed upon by Joy and the Bank, corresponding to the seventeen thousand one hundred provincial *pesos*, held for payment when its turn should arrive; that Joy did not pay Mayol as had been agreed, and the Bank had to do so in order to avoid greater losses; that the Bank was for a long time ignorant of the fact that Joy was not paying Mayol the aforesaid interest; in regard to foreclosure procedings Joy was to blame for the institution thereof by Mayol against him, inasmuch as he had refused to intervene in the liquidation of interest, the Bank not considering that it was authorized to pay for the account of Joy more than he had on deposit; it is true that a written demand was made on February 12, 1897, and the said instrument itself is proof that the seventeen thousand one hundred *pesos* were in the Bank to be delivered in due time, and, therefore, it was Joy who violated the agreement in failing to pay the interest to Mayol; that by an instrument executed on July 12, 1898, before Notary Antonio Alvarez Nava, it was agreed that in order that the Bank might collect the fourth, fifth and sixth installments of its mortgage and other sums due them by Joy, in connection therewith, the Bank would take over the coffee crop of the "Honradez" estate; that it is not true that the Bank had received full payment for all the outstanding installments

el Banco cobró la póliza de seguro de siete mil quinientos pesos provinciales, pero niega que ese importe, íntegramente, se dedicase á otra cosa que á las obligaciones procedentes del crédito hipotecario : que la deuda hipotecaria que ha reclamado por procedimiento ejecutivo, está toda vencida, porque en Febrero de 1901, al presentar la demanda, tenía Joy vencidos y no satisfechos, no dos plazos, sino seis, á partir del 15 de Julio de 1898.

*Resultando* : que sustanciado el pleito y recibido el pleito á prueba, se practicó la documental, de correspondencia, se trajeron actuaciones del ejecutivo que siguió el Banco contra Don Lorenzo Joy y Colón y una certificación expedida por el Secretario del Tribunal de Ponce, por donde se viene en conocimiento de que Don Pedro A. Mayol ejecutaba á dicho Joy por el importe de su hipoteca, que no estaba satisfecha al iniciar el Banco el procedimiento hipotecario contra el referido Don Lorenzo Joy y Colón.

*Resultando* : que señalado día para el juicio oral, tuvo éste efecto, dictándose, en 22 de Enero de 1902, sentencia, declarando sin lugar la demanda de nulidad de actuaciones, y declarando que Joy dejó en poder del Banco tres mil setecientos pesos para cancelar la hipoteca de Mayol, con las costas al demandado.

*Resultando* : que notificada esa sentencia se interpuso por la representación del actor recurso de casación por infracción de ley, autorizado por los números 1 y 7 de la Ley de Enjuiciamiento Civil, en la forma siguiente : .

I.—Infracción del Artículo 4 del Código Civil, el que dice:—"son nulos los actos ejecutados contra lo dispuesto en la ley, salvo los casos en que la misma Ley ordene su validez". "Los derechos concedidos por las Leyes son renunciables á no ser esta renuncia contra el interés ó el orden público, ó en *perjuicio de tercero*". Bien es verdad que en virtud de ese artículo, Don Lorenzo Joy podía renunciar. al derecho que le concede el Artículo 1174 del mismo Código, y permitir que las cantidades que entregara al Banco, dimanadas de la finca "Honradez", se aplicaran á cubrir otras aten-

up to January 1899, for in the deed of liquidation of accounts of February 6, 1901, it is shown that the harvest and sale of the crop taken over by the Bank under the contract of July 12, 1898, did not leave after deducting expenses, enough balance to cover the account for which it was intended; that pursuant to agreement, the Bank collected the insurance amounting to seven thousand five hundred provincial *pesos*, but denies that the whole of this sum was applied to anything other than the obligations arising from the mortgage credit; that the mortgage debt for which it has instituted foreclosure proceedings is wholly due, because in February, 1901, when the suit was brought, Joy owed not two but six matured and unpaid installments, beginning with the fifth on July 15, 1898. At the proceedings for the taking of evidence, documents were submitted consisting of the correspondence, the records of the foreclosure proceedings instituted by the Bank against Lorenzo Joy y Colón, and a certificate issued by the Clerk of the Ponce Court, showing that Pedro A. Mayol had brought an executory action against Joy for the amount of the mortgage which had not been paid at the time the Bank had begun foreclosure proceedings against said Lorenzo Joy y Colón. A day was set for the hearing of the case, and on January 22, 1902, the Court rendered judgment dismissing the complaint praying for the annulment of proceedings and declaring that Joy had on deposit with the Bank the sum of three thousand and seven hundred *pesos* for the purpose of cancelling Mayol's mortgage, and taxing the costs against the defendant. Notice of said judgment having been served upon the attorney for the plaintiff, he took an appeal in cassation for error of law, under Paragraphs 1 and 7 (of Article 1690) of the Law of Civil Procedure as follows:

I.—Violation of Section 4 of the Civil Code which reads: "Acts executed contrary to the provisions of law are void, except when the law preserves their validity. Rights granted by the laws may be renounced, provided such renunciation be not contrary to law, to public interest or public order, or prejudicial to the interest of a third person." It is true that on the

ciones y no los plazos que se le vencieran de su hipoteca sobre aquella finca, pero como al hacer renuncia de ese derecho perjudicaba los de terceros acreedores hipotecarios, como lo son Doña María Pastor y Don Nicolás Joy, tal renuncia es nula de ley é inválido el contrato en que se hizo.    El Artículo 4 dice claramente que son nulos los actos ejecutados contra lo dispuesto en la Ley" y si ésta afirma que no puede renunciarse derecho, cuya renuncia perjudique á tercero, Don Lorenzo Joy no ha podido renunciar al que le asistía de que la cosecha de café de la finca "Honradez" y los importes de los aseguros de incendios en ella ocurridos y que cobró el Banco con obligación de abonarlos á cubrir la hipoteca, según la escritura, pudieran ser invertidos en otras atenciones que en solventar los plazos de la hipoteca, pues esa renuncia lastimaba derechos de los segundos acreedores hipotecarios, que son terceros.    Si, pues, es nula la renuncia que hizo Joy, es nula la escritura de 6 de Febrero de 1901, en que aquella se consignó.

II.—Violación del Artículo 1265 del Código Civil que fija como nulo el consentimiento dado por error en un contrato, si como dice el Artículo 1266, *recae sobre la sustancia de la cosa* que fuere objeto del contrato.    Lorenzo Joy creyó que las cosechas de café de la finca "Honradez", y las cantidades de los seguros de incendios, podía dedicarlas á lo que creyera convenientemente y dió su consentimiento para la escritura de liquidación de cuentas de 6 de Febrero de 1901, perjudicando derechos adquiridos por otros acreedores; ha mediado, pues, *consentimiento por error* y esto anula aquel contrato, según el Artículo 1300 del referido Código.'

III.—Infracción del Artículo 1265 del Código Civil, en cuanto afirma es nulo el consentimiento dado por dolo, el que existe, según el 1269, cuando por palabras ó maquinaciones insidiosas de parte de uno de los contratantes, es inducido el otro á celebrar un contrato que sin ellos no hubiera hecho. El Artículo 1249 establece la prueba de presunciones en el sentido de que sólo son admisibles, cuando el hecho de que han de deducirse esté completamente acreditado.    Hecho cierto es, y acreditado en autos, que en esa escritura de liquidación de cuentas de 6 de Febrero de 1901, Joy permite se le abone el cuarto plazo de su hipoteca y el resto del dinero sea invertido en otras atenciones; de igual modo es cierto que anteriormente dió la cosecha de café para pagar el cuarto, quinto y sexto plazo de la hipoteca, según escritura de 12 de Julio de 1898, unida al expediente y también se acredita en el pleito que el día 11 del mismo mes y año el Banco ejecutó á Joy por los otros plazos; tiene, pues, que presumirse en favor del último que ha debido mediar algún convenio de prórroga ó espera para que se aviniera á firmar la mencionada liquidación, pues de lo contrario, no hubiera dado por satisfecho solo ese cuarto plazo, cuando por la escritura de dación en pago,

strength of this Article, Lorenzo Joy could renounce the right granted him by Article 1174 of the same Code, and permit the sums he had delivered to the Bank proceeding from the "Honradez" estate, to be applied to meeting other engagements than the payment of the installments falling due under the mortgage on said estate, but inasmuch as by renouncing said right he would prejudice the interests of third mortgage creditors, namely María Pastor and Nicolás Joy, such renunciation is void according to law and the contract in which it was made is not valid. Article 4, says clearly that "acts contrary to the provisions of law are void", and if the law declares that rights cannot be renounced where such renunciation operates to the prejudice of the interest of a third person, Lorenzo Joy could not have renounced his right by permitting the coffee crop of the estate "Honradez" and the amount of the fire insurance collected by the Bank, with the obligation to apply them to the cancellation of the mortgage pursuant to contract, to be applied to any purpose other than meeting the mortgage installments, inasmuch as said renunciation prejudiced the rights of the second mortgage creditors who are third persons. If then, the renunciation made by Joy is null and void, the deed dated February 6, 1901, wherein said renunciation was stipulated, is likewise null and void.

II.—Violation of Article 1265 of the Civil Code which declares that consent given by *error* in a contract is void, if, as explained in Article 1266, the error refers to the substance of the thing which may be the object of the contract. Lorenzo Joy believed that he could apply the coffee crop of the estate "Honradez" and the amount of fire insurance to whatever he might deem advisable, and gave his consent to the deed of liquidation of accounts, of February 6, 1901, thus prejudicing the rights acquired by other creditors; there has been, then, *consent given by error*, and this invalidates the aforesaid contract according to Article 1300 of said Civil Code.

III.—Violation of Article 1265 of the Civil Code, inasmuch as it declares null and void the consent given where there is deceit, which according to Article 1269 exists when by words or insidious machinations on the part of one of the contracting parties, the other is induced to execute a contract which, otherwise he would not have made. Article 1249 provides that presumptive evidence is only admissible when the fact from which such presumptions are to be deduced have been fully proven. It is a fact that has been proven and stands on record, that in the aforesaid instrument of liquidation of accounts of February 6, 1901, Joy permits the fourth installment of his mortgage to be credited to him, and that the balance of the money be applied to other purposes; it is also true that he had previously assigned the coffee crop for the purpose of paying the fourth, fifth and sixth installments of the mortgage according to the contract

del año 1898, tenía ya satisfecho los cuarto, quinto y sexto plazos, ni permitido se distrajera el ótro dinero del seguro en algo que no fuera á cubrir los plazos del préstamo hipotecario ó sean el séptimo, octavo y noveno, evitándose así una ejecución. Existe la maquinación del Director Gerente del Banco para inducir á Joy á firmar esa escritura de liquidación de cuentas; hay dolo y por tanto, el contrato, hijo de consentimiento por engaño, carece de eficacia y valor legal.

IV.—Interpretación errónea del Artículo 1269 del Código Civil, al afirmarse tranquilamente que el dolo que comprende ese precepto no apareja nulidad de los contratos y sí solo indemnización de daños y perjuicios. El Artículo trata del dolo causante, ello es, de aquel sin cuyo concurso el contrato no se hubiera celebrado, como dicen, entre otras, las Sentencias del Tribunal Supremo de España, de 20 de Mayo 1864 y 24 de Septiembre de 1867, no es el dolo incidental á que se refiere el Artículo 1270. Si el Director Gerente del Banco no hubiera dicho que la hipoteca se prorrogaba, Joy no hubiera firmado semejante escritura de liquidación de cuentas.

V.—Violación del Artículo 6 del Código Civil, al citarse como texto legal la Partida V en sus Títulos 11 y 14, Leyes 28 y 49, pues de no existir precepto en el Código, solo puede acudirse á la costumbre de lugar y á los principios generales del Derecho, pero no á las Partidas que hoy no tienen fuerza de Ley. Si el Tribunal se fija, hubiera encontrado en el mismo Código algo parecido á esas Leyes de la Partida V, en sus Artículos 1309 y 1310, fijando el primero que la acción de nulidad se extingue desde el momento que el contrato haya sido confirmado válidamente, y el segundo que solo son confirmables los contratos que reunan los requisitos del Artículo 1261, ó sean el consentimiento, objeto y causa. En su consecuencia faltando el consentimiento en la escritura de liquidación de cuentas de 6 de Febrero de 1901, ese contrato no puede ser confirmado y no existiendo este requisito no se extingue la acción de nulidad.

VI.—Interpretación errónea del Artículo 1301 del Código, al citarlo como fundamento para decir que á Joy no le ampara el derecho de ejercitar la acción de nulidad de la escritura de 6 de Febrero de 1901, por la circunstancia de que aquella sólo dura cuatro años que se contarán en el dolo ó error, desde la consumación del contrato, pues si esa escritura nació el año 1901, antes no podía consumarse ese contrato y sí después y desde esa fecha hasta el 9 de Noviembre del mismo año, en que se interpuso la demanda, no habían transcurrido esos cuatro años de prescripción. Ese Artículo 1301, es el que precisamente autoriza al Sr. Joy para pedir la nulidad de la dicha

of July 12, 1898, attached to the record, and it has also been proven at the trial that on the 11th day of the same month and year, the Bank instituted foreclosure proceedings against Joy for the recovery of the other install-ments; it is, therefore, to be presumed on behalf of the latter, that there must have been some agreement as to extension of time to induce him to sign the above mentioned liquidation, as otherwise he would not have admitted that only the fourth installment had been paid, when by the contract of delivery in payment, of 1898, he had already made good the fourth, fifth and sixth installments, nor would he have consented to any application of the insurance money being made other than to meet the installments of the mortgage loan, namely, the seventh, eighth and ninth, thereby avoiding an execution. There is machination on the part of the manager of the Bank to induce Joy to sign the deed of liquidation of accounts; there is fraud, and, therefore, the contract resulting from consent obtained by deceit, lacks efficacy and legal validity.

IV.—Erroneous construction of Article 1269 of the Civil Code, in hold-ing that the fraud mentioned in said provision does not carry with it the nullity of contracts, but only an indemnity for damages. The Article refers to the fraud responsible for the contract and without the existence of which it would not have been executed, which as is held by the decisions of the Supreme Court of Spain, dated May 20, 1864, and September 24, 1867, is not that incidental fraud to which reference is made in Article 1270. If the managing director of the Bank had not stated that the mortgage would be extended, Joy would not have signed such a liquidation of accounts.

V.—Violation of Article 6 of the Civil Code, in citing as legal authority Partida V, Titles 11 and 14, laws 28 and 49, for when there is no provi-sion in the Code, recourse can only be had to the customs of the place and to the general principles of law, but not to the Partidas, which have no legal force at present. Had the Court searched more closely, it would have found in the same Code something similar to these laws of Partida V, in Articles 1309 and 1310, the first of which provides that an action for nullity is barred from the moment the contract has been validly confirmed, and the second, that only contracts having all the requisites mentioned in Article 1261, that is to say, the consent, object and consideration thereof, can be confirmed. And, whereas, the consent is lacking in the instrument of liquidation of accounts of February 6, 1901, said contract cannot be con-firmed, and this requisite being absent, the action for nullity is not barred.

VI.—Erroneous construction of Article 1301 of the Code, in citing it as ground for declaring that Joy has no right to maintain an action for the nullity of the deed of February 6, 1901, for the reason that the right to bring such action only runs four years, beginning to run, in those of error or

escritura.   Y aquí vuelve á surgir la absurda aplicación de las leyes 28 y
49 de los Títulos 11 y 14 de la partida V, pues si éstos no admiten la nuli-
dad si el que la pide ya ha realizado los actos á que dió origen el contrato
que interesa se declare nulo, como la realización del convenio envuelve la
consumación y luego de ésta, es que concede ese Artículo 1301 cuatro años
para demandar nulidad, resultan contradictorios Código y Partida, y hay
que estar con el primero de esos cuerpos legales; pero á mayor abunda-
miento, esas Leyes de Partida, si bien es verdad que afirman que el obligado
por dolo no puede alegar la nulidad fundado en ese extremo, para privarle
de ese derecho, se exigen dos requisitos, á saber : que cumpla lo que prome-
tió y que haya dejado pasar el tiempo marcado en las leyes para ejercitar la
acción de nulidad.    Es así que el Sr. Joy no ha cumplido sino que empezó á
cumplir, como lo dice la sentencia, lo convenido en la escritura de 6 de
Febrero de 1901, luego no está comprendido en el primer requisito de esas
leyes 28 y 49 que le impidan solicitar la nulidad de la escritura: es así que
el Sr. Joy no ha dejado transcurrir los cuatro años que le otorga el Artículo
1301 para ejercitar la acción de nulidad, luego falta también el segundo
requisito que para tal fin exigen las repetidas Leyes 28 y 49.

VII.—Interpretación errónea del Artículo 1157 del Código Civil, al no
estimarse como pagados por Joy al Banco los plazos quinto al noveno de
la escritura de hipoteca y autorizar el procedimiento hipotecario en cobro de
esas sumas, lo que invalida esa ejecución.    Palmariamente se ha demostrado
que la escritura de liquidación de cuentas de 6 de Febrero de 1901 es nula
de derecho y tenemos que, por la escritura de dación en pago de la cosecha de
café, fecha 12 de Julio de 1898, se abonaron los plazos cuarto, quinto y sexto
de la hipoteca y con los siete mil quinientos pesos provinciales de los seguros
de incendios, pólizas que cobró el Banco y que por la escritura de hipoteca
venía obligado á abonar á éste, se cubrieron los plazos séptimo, octavo y
noveno, venciendo este último en el mes de Julio de 1899, satisfechas esas
sumas, y procedimiento hipotecario que se inicie para su cobro es nulo de
derecho.    Bien es verdad que en 11 de Febrero de 1901, cuando se inició
el procedimiento hipotecario, Joy debía al Banco únicamente el plazo ven-
cido de 15 de Enero del mismo año, pero como la escritura de hipoteca dice
de conformidad con el Artículo 26 de los Estatutos, que sólo podrá ejecu-
tarse cuando haya dos plazos vencidos, despachada la ejecución por uno solo,
es nulo el procedimiento.

VIII.—Infracción del Artículo 175 del Reglamento Hipotecario, toda
vez que éste autoriza los juicios declarativos pidiendo la nulidad de las actua-
ciones del procedimiento hipotecario por vencimiento ó cuantía de la deuda,
pues Joy no debe al Banco los plazos quinto al nueve, porque ejecutó, y el

fraud, from the date of the execution of the contract, for if aforesaid deed was executed in the year 1901, that contract could not have been executed before, but could have been afterwards, and from that date to November 9th of the year when the action was brought, those four years of prescription had not elapsed.    That Article 1301 is the one which authorizes Joy to demand the nullity of aforesaid deed.    And here again comes up the absurd application of laws 28 and 49, Titles 11 and 14 of Partida V, for if these do not admit the nullity when the applicant has performed the acts which led to the contract, the nullity whereof he demands, as the performance of the contract implies its execution, and it is after such execution that Article 1301 allows four years within which to bring the action of nullity, it follows that Code and Partida contradict each other, and we must abide by the provisions of the former.    But furthermore these laws of the Partida, although it is true that they provide that a person bound by fraud cannot allege the nullity of an instrument on that ground, in order to deprive him of his right, two requisites are necessary, to-wit : that he shall have fulfilled his promise, and that he shall have allowed to elapse the time fixed by the laws for the prosecution of an action for nullity.    And, whereas, Joy has not fulfilled, but only commenced to fulfill, as stated in the judgment, the stipulations of the contract of February 6, 1901, he does not come under the first requisite of aforesaid laws 28 and 49, which bars him from demanding the nullity of the contract; and, whereas, Joy has not allowed to elapse the four years as provided by Article 1301 to prosecute an action for nullity, the second requisite prescribed for this purpose by aforesaid laws 28 and 49, is likewise lacking.

VII.—Erroneous construction of Article 1157 of the Civil Code, in not considering as paid by Joy to the Bank installments fifth to ninth of the mortgage deed, and authorizing the foreclosure proceedings for the collection thereof, which erroneous construction invalidates said execution.    It has been clearly shown that the deed of liquidation of accounts of February 6, 1901, is legally void, and we have seen that by the deed of delivery of the coffee crop, dated July 12, 1898, the fourth, fifth and sixth installments of the mortgage were paid, and with the seven thousand five hundred provincial *pesos*, from the fire insurance collected by the Bank, and which by the mortgage deed it was bound to credit to said mortgage, the seventh, eighth and ninth installments were covered, the latter falling due in July 1899. These sums having been paid, the foreclosure proceedings instituted for their recovery would be legally null and void.    It is true that on February 11, 1901, when the foreclosure proceedings were instituted, Joy owed the Bank only the installment falling due on January 15, of the same year, but as the mortgage deed, agreeable to Article 26 of the Statutes, specifies that a foreclosure can only be had when two installments have become due, the writ of execution having been issued for only one, the proceedings are null and void.

décimo plazo sólo, no envuelve el vencimiento, pues se necesitan dos por lo menos, que según se ha dicho en el precedente anterior, fué convenido en la escritura de hipoteca y consta en el Artículo 26 de los Estatutos. Ha debido, pues, el Tribunal admitir la demanda en juicio declarativo de Joy contra el Banco sobre nulidad del procedimiento hipotecario.

IX.—Violación de las Ordenes Generales de 19 y 31 de Enero de 1899 y 12 de Febrero y 28 de Abril de 1900. Dicen las de 19 y 31 de Enero que se entendían prorrogados por un año á partir del 19 de Enero de 1899, los vencimientos de los créditos hipotecarios; la de 12 de Febrero de 1900 prorrogó seis meses más; é igual tiempo hubo de conceder la de 28 de Abril del mismo año. En su virtud la deuda que vencía en Enero de 1899 no podía ser exigible hasta el 19 de Enero de 1901 y nos encontramos con que habiendo satisfecho Joy los plazos quinto al nueve, de su hipoteca, el décimo, que parece vencía en 15 de Enero de 1901, no vencerá hasta el 15 de Enero de 1903, pues no es posible que el legislador tuviera intención de acumular varios plazos para hacer más aflictiva la situación de los agricultores á quienes quería favorecer.

X.—Infracción de los Artículos 1215 del Código Civil y 577 de la Ley de Enjuiciamiento Civil al aceptar el Tribunal como medio de prueba de que el Banco había pagado á Mayol su primera hipoteca, las palabras vertidas en su discurso por el Letrado defensor de dicha Institución. Jamás había visto este Letrado que por Juez ó Tribunal se diera por probado un hecho, hijo de la simple manifestación en el juicio oral del Director Jurídico de una de las partes litigantes.

XI.—Error de hecho en la apreciación de las pruebas, pues constando en autos por documentos auténticos que Don Pedro A. Mayol ejecutaba á Joy por el importe de su hipoteca de treinta mil pesos, que no estaba satisfecha al iniciar el Banco el procedimiento contra el mismo Joy, en cobro de lo que él, á su vez, no había pagado á Mayol y así aparece de la certificación que para anunciar la subasta libró el Registrador de la Propiedad, el Tribunal, no obstante esa prueba documental, prescinde de ella y tomando como fundamento la simple manifestación del Abogado del Banco en el juicio oral, de que Mayol estaba satisfecho en su crédito, declara improcedente la declaración de nulidad del procedimiento hipotecario, seguido en cobro de sumas que Joy debería al Banco si éste las hubiera dado á Mayol, lo que no había hecho al ejecutar á mi mandante. Y paso por alto la extraña y singular afirmación del Tribunal, en la última parte del Considerando primero, de que puesto que existía el depósito hecho por Joy en el Banco, para pagar la hipoteca á Mayol, aunque no se hubiera hecho el pago, ésto no impedía la

VIII.—Violation of Article 175 of the Regulations for the execution of the Mortgage Law, which authorizes declaratory suits demanding the nullity of foreclosure proceedings instituted on account of the maturity of the debt or in regard to the amount thereof, inasmuch as Joy does not owe the Bank the fifth to ninth installments for the recovery of which it instituted foreclosure proceedings, and the tenth installment alone does not involve the maturity of the debt, since two at least, are required for this purpose, which, as stated in the preceding allegation, was agreed to in the mortgage deed, and is provided for in Article 26 of the Statutes. The Court, therefore, should have admitted the complaint in the declaratory suit brought by Joy against the Bank, demanding the nullity of the foreclosure proceedings.

IX.—Violation of General Orders of January 19, and 31, 1899, and February 12, and April 28, 1900. Those of January 19th, and 31th, declared that mortgage debts were understood to be extended for one year from January 19, 1899; that of February 12, 1900, allowed a further extension of six months, and a similar extension was granted by that of April 28th, of the same year. Consequently, the debt which fell due in January 1899, could not be collected until January 19, 1901, and we find that the 5th to 9th installments of this mortgage, having been paid by Joy, the 10th, which appeared as maturing on January 15, 1901, will not fall due until January 15, 1903, for it is not to be supposed that the legislator's purpose was to bring together several installments, and thereby aggravate the situation of the agriculturists whom it was desired to relieve.

X.—Violation of Articles 1215 of the Civil Code, and 577 of the Law of Civil Procedure, in admitting as evidence the statement made by the attorney-at-law of said defendant in his speech to show that the Bank had paid Mayol his first mortgage. Never have we seen a judge or Court admit a fact to be proven on the strength of a simple declaration made at the trial by the attorney for one of the parties litigant.

XI.—Error of law in the consideration of evidence, for it appearing of record from authentic documents, that Pedro A. Mayol instituted foreclosure proceedings againt Joy to recover the amount of his mortgage of thirty thousand *pesos*, which was not satisfied at the time the Bank instituted proceedings against Joy, for the recovery of what it had not paid Mayol, as appears from the certificate issued by the Registrar of Property for the purpose of advertising the public sale, the Court, notwithstanding this documentary evidence, disregards it, and basing its decision on the mere statement of the Bank's attorney at the trial, to the effect that Mayol's credit had been paid, refuses to declare the nullity of the foreclosure proceedings instituted for the recovery of certain sums that Joy would be owing the Bank,

ejecución del Banco contra Joy, porque su crédito hipotecario estaba reconocido en escritura pública y siempre y en todo caso era el Banco responsable del pago de la hipoteca á Mayol. Entendía este Letrado que aunque una deuda conste en documento público, si ella comprende una condición previa, cual era la de pagar el Banco á Mayol para luego hacerlo Joy al Banco, en tanto el Banco tenga ese dinero en su poder, ¿cómo vá á debérselo Joy? ¿En virtud de qué Ley puede pagar uno á terceras personas desembolsos que éstas no han hecho? Que en todo caso el Banco era responsable del pago de la hipoteca de Mayol, no lo entiendo así, pues Mayol era un tercero que no venía obligado á los convenios de Joy y el Banco, y además el Artículo 105 de la Ley Hipotecaria dice que los bienes hipotecados, cualquiera que sea su poseedor, son los que responden á la hipoteca, no las personas, y tan es así que Mayol ejecutó la finca de Joy, prescindiendo del deudor y sobre todo del Banco.

XII.—Violación del Artículo 63 de la Orden General 118 de 1899 que dice: "se impondrán las costas á aquella parte cuyas pretensiones sean totalmente desestimadas". Es así que una de las pretensiones de Joy en su demanda es la de que se declare que dejó en poder del Banco treinta y siete mil pesos para cancelar la hipoteca de Mayol, y así lo acuerda el Tribunal en su fallo, luego ha accedido á una de sus pretensiones y si se le imponen todas las costas, se viola el referido artículo 63 de la Orden 118, Serie correspondiente al año 1899.

Abogado del recurrente: *Sr. López Landrón.*

Abogado del recurrido: *Sr. Guzmán Benítez (José).*

EL JUEZ ASOCIADO SR. SULZBACHER, después de exponer los hechos anteriores, emitió la siguiente opinión del Tribunal:

*Considerando*: que no se ha podido infringir el artículo 4 del Código Civil en el concepto que se alega en el primer motivo del recurso, porque no consta en forma alguna que el recurrente haya hecho renuncia de derechos en perjuicio de tercero, sino que por el contrario, de la escritura de 6 de Febrero de 1891 se evidencia que expontáneamente usó del derecho que le otorga el Artículo 1172 del Código Civil declarando á qué deudas debían aplicarse los pagos.

*Considerando*: que reconocida por el actor la obligación que contrajo con el Banco Territorial y Agrícola en virtud

if the latter had paid same to Mayol, which it had not done when it instituted foreclosure proceedings against plaintiff. And we disregard the strange and singular statement made by the Court, in the latter part of the first conclusion of law to the effect that inasmuch as there existed the deposit made by Joy with the Bank for the purpose of satisfying Mayol's mortgage, the fact that the payment to Mayol had not been made did not prevent the Bank from instituting foreclosure proceedings against Joy, because its mortgage credit was recognized by a public document, and at all events, the Bank was responsible for the payment of the mortgage to Mayol. We had understood that although a debt appeared in a public document, if said debt involved an antecedent condition, such as that the Bank was to pay Mayol first and then Joy would pay the Bank, as long as the Bank retains that money in its possession how could it owe it to Joy? By virtue of what law can a person be called upon to pay to third parties for disbursements which the latter have not made? As to the Bank being responsible for the payment of Mayol's mortgage, we do not so understand it, as Mayol was a third person who was not obligated by the agreements entered into between Joy and the Bank, and, moreover, Article 105 of the Mortgage Law says that mortgaged property, whoever may be its owner, is responsible for the mortgage, and not persons, and this is so true that Mayol instituted foreclosure proceedings against Joy, regardless of both the debtor and the Bank.

XII.—Violation of Section 63 of General Orders No. 118, Series of 1899, which reads: "Costs shall always be paid by the litigant who loses his case on all points." So that as one of the allegations of Joy in his complaint is that he had deposited thirty-seven thousand *pesos* with the Bank for the purpose of cancelling Mayol's mortgage, and this has been admitted by the Court in its judgment, it follows that the court has sustained one of his claims, and if all the costs are taxed against him, Section 63 of General Orders No. 118, Series of the year 1899, would be violated.

*Mr. Rafael López Landrón,* for appellant.

*Mr. José de Guzmán Benítez,* for respondent.

Mr. Associate Justice Louis Sulzbacher, after making the above statement of the case, rendered the following opinion of the Court: Article 4 of the Civil Code could not have been violated in the sense urged under the first allegation of the appeal, inasmuch as it does not appear in any manner whatsoever that appellant has waived any rights to the prejudice of a third person, but, on the contrary, from the deed of February 6, 1891, it is evident that

de la escritura anteriormente citada, para que el consentimiento prestado por error afectase de modo esencial á la validez del documento y á las relaciones jurídicas que voluntariamente contrajo en él con el acreedor, era indispensable que se hubiese demostrado que el error lo tuvo en las circunstancias que constan de la escritura, pero en modo alguno puede referirse ese error á hechos agenos al contrato, como son las renuncias de derechos en perjuicio de tercero y por esta razón no se ha cometido la infracción que se alega en el segundo motivo del recurso.

*Considerando* : que si el dolo causante, sin el que no se hubiere celebrado el contrato, viciando el consentimiento, produce la nulidad de aquél, para que prospere la acción de tal dolo es imprescindible que se acredite su existencia, y como la Sala sentenciadora, como fundamento principal, niega la existencia del dolo causante ante el consentimiento, y éste es un punto de hecho sometido á la apreciación del Tribunal *á quo*, que no se impugna en debida forma, caen por su base los motivos tercero, cuarto, quinto y sexto del recurso.

*Considerando* : que aún suponiendo por un momento que fuese nula la escritura de 6 de Febrero de 1901, como lo pretende el recurrente, tampoco podría afirmarse que estaban hechos los pagos con la de 12 de Julio de 1898, á que se refiere el motivo séptimo, porque para que pudiera sostenerse con fruto esta alegación, era preciso que se hiciese antes la prestación en que la obligación consistía, es decir, recolección del fruto, venta, liquidación y pago total de la cuenta y demás sumas convenidas, y, no estando pagados dichos plazos, no se ha infringido el Artículo 175 del Reglamento Hipotecario, al despacharse la ejecución, y no puede por tanto, por este motivo, declararse nulas las actuaciones del procedimiento hipotecario á que se ajustó el Banco Territorial y Agrícola en el cobro de su crédito contra el recurrente.

he voluntarily made use of the right granted him by Article 1172 of the Civil Code, in declaring to what debts the payments should be applied. The obligation contracted by plaintiff with the Bank Territorial y Agrícola, being recognized by the plaintiff in the aforesaid instrument, in order that the consent given by error may essentially affect the validity of the document and the legal relations voluntarily contracted therein with the creditor, it would be necessary to show that the error sprang from circumstances contained in the deed, but such error can in no manner refer to facts foreign to the contract, as are the renunciations of rights to the prejudice of a third person, wherefore the violation alleged in the second ground of the appeal has not been committed. If the fraud, without which the contract would not have been executed, by vitiating the consent, produces the nullity thereof, in order to maintain the action for fraud, it is necessary that its existence should be established, and as the Court below denies as a fundamental ground the existence of fraud before consent, and this is a point of fact submitted to the consideration of the Court, *a quo*, which has not been contested in due form, points 3, 4, 5, and 6, of the appeal have no ground to stand upon. Even granting for a moment that the deed of February 6, 1901, was void, as claimed by appellant, still it could not be held that the payments had been made with the deed of July 12, 1898, referred to in the seventh ground of appeal, because in order to sustain successfully this allegation, it would be necessary that the conditions constituting the obligation should have first been fulfilled, such as the harvesting of the crop, its sale, liquidation and full payment of the account, and other sums agreed upon, and inasmuch as said installments were not paid, Article 175 of the Regulations for the execution of the Mortgage Law was not violated upon issuing the writ of execution, and therefore, the foreclosure proceedings instituted by the Bank Territorial y Agricola against the appellant, for the recovery of its credit, cannot for this reason be

*Considerando* : que las Ordenes Generales que se citan y analizan en el noveno motivo del recurso, no pudieron, bajo ningún concepto, modificar ni anular lo que las partes capaces de obligaciones y ajustándose á las leyes que sus contratos regulaban, convinieron de modo libre y expontáneo, por cuya razón dichas disposiciones sólo tuvieron un carácter meramente procesal, suspendiendo el cobro de plazos por cierto tiempo y en determinadas circunstancias, pero en modo alguno puede pretenderse que el acreedor dejare de cobrar su crédito hipotecario, una vez que cesó la suspensión de los procedimientos, bajo el supuesto de que, por virtud de esas órdenes, la deuda que vencía en Enero del 99 no podía ser exigible hasta el 19 de Enero de 1901.

*Considerando* : que el motivo décimo no tiene finalidad práctica, porque á nada conduce, dentro de la pretensión capital del recurrente, el que el Tribunal recogiese la manifestación del Letrado del Banco en el acto de la vista, referente á estar cancelada la hipoteca de Mayol, porque ese mismo Tribunal afirma, al propio tiempo, que, aún. en el caso contrario, podía el Banco exigir judicialmente á Joy el pago de su deuda.

*Considerando* : que la Corte de Distrito de Arecibo no ha cometido el error de hecho á que se refiere el undécimo motivo, puesto que reconoce que al iniciar la ejecución el Banco, contra el recurrente, no estaba satisfecha la hipoteca constituida á favor de Don Pedro A. Mayol, dando así el valor que tiene al documento que se cita, pero también considera que aunque no fuese así, esta circunstancia no se oponía á que el Banco ejercitase su derecho contra Joy, á tenor del contrato celebrado, que en modo alguno estaba subordinado á aquella condición.

*Considerando* : que el Tribunal de Arecibo ha interpretado bien y fielmente la disposición vigente referente á las costas, y á que alude el recurso en su motivo final, porque la Regla 63 de la Orden General No. 118, de 5 de Agosto

declared null. The General Orders that are cited and analyzed under the ninth allegation of the appeal could in nowise modify or annul what the parties, having capacity to contract obligations and adjusting themselves to the laws which regulated their contracts, had freely and voluntarily agreed, and hence said provisions were merely in the nature of a procedure whereby the collection of installments was suspended for a certain time and under specified circumstances, but it could never be presumed that the creditor should waive the collection of his mortgage credit after the suspension of proceedings had ceased, on the supposition that by reason of aforesaid orders, the payment of the debt which fell due in January 1899, could not be demanded until January 19, 1901. The tenth ground alleged on appeal has no practical application, because the fact that the Court did consider the statement made by the Bank's attorney at the hearing to the effect that Mayol's mortgage had been satisfied, is of no importance whatever for the determination of appellant's principal claim, inasmuch as the Court had at the same time held, that even if such had not been the case, the Bank could still enforce judicially the payment of Joy's debt in its favor. The District Court of Arecibo did not commit the error of fact alleged under the eleventh ground of appeal, inasmuch as it admits that when the Bank instituted foreclosure proceedings against appellant the mortgage constituted in favor of Mayol was not satisfied, thus giving due value to the instrument referred to, but at the same time it holds that even if this were not so, it would be no bar to the Bank's right to claim against Joy pursuant to the contract entered into which was in nowise subject to the aforesaid condition. The Court of Arecibo has correctly and faithfully construed the provision in force with reference to costs alluded to in the last ground of appeal, because Rule 63 of General Order No. 118 of August 5, 1899, provides that costs shall always be paid by the litigant who loses his case on all points, and

de 1899, estatuye que se impondrán siempre á la parte cuyas pretensiones se hubieran totalmente desestimado, y es indudable que en el presente caso ha habido una desestimación absoluta de todo lo sustancial contenido en la súplica de la demanda, ó sea la nulidad de la escritura de 6 de Febrero de 1901, la nulidad del procedimiento sumarísimo hipotecario y la indemnización de daños y perjuicios, sin que pueda desvirtuar este criterio la declaración que hace la Sentencia, porque también se solicitó, de un hecho evidente, contenido en documento público, reconocido por la contraria, cual es la consignación, en el Banco, de la cantidad importe de la hipoteca de Mayol.

*Considerando:* por tanto, que no se han cometido las infracciones alegadas en el recurso.

*Fallamos:* que debemos declarar y declaramos no haber lugar al recurso de casación interpuesto por Don Lorenzo Joy y Colón, al que condenamos en las costas del recurso; y líbrese la oportuna certificación á la Corte de Distrito de Arecibo, con devolución de autos, para los efectos procedentes.

Jueces concurrentes: Sres. Presidente Quiñones, y Asociados, Hernández, Figueras y MacLeary.